please honor me with this, uh commission. I would respectfully request an extra five minutes of time if possible. All right, thank you. And I would like to reserve several minutes for rebuttal. Um, we've read your papers, so we're familiar with the argument. So what would you like to talk to us? What would you like to highlight today? Basically, two things. First is the question of which is the appropriate standard to be applied. Whether it's the objective standard which has been followed in the Fifth Circuit or whether it's the subjective standard which has been followed in the Third Circuit under the Thompson case. Um, counsel for the respondent IRS has suggested there's no conflict. With all due respect, I think there clearly is. There's a difference between trying to find objective business purpose, for example, under Strange, and whether or not there is a bona fide sale, whether or not there is full and adequate consideration, on the one hand, all of which are objective determinations. And that's the Fifth Circuit approach. Or whether under as indicated in Thompson and as the tax court did in this case, it's purely a question of, quote, unquote, good faith. And I think those are two very different standards. So the first question is, in which direction this circuit wishes to go in terms of setting a standard for not only this case, but in future cases? Do you wish me to discuss that or or the actual question? Excuse me? I have a factual question about the transfer of the property into the FLP. Why was it that the property was transferred into the FLP, that the liability that it that the property secured was not also transferred, so that the entire asset was transferred into the family corporation? There were two liabilities attached to the property, Your Honor. The first was the purchase money mortgage with Great Western Savings and Loan. That was, in essence, transferred into the limited partnership. And, in fact, the IRS has put great weight on that as being an indication of how the decedent retained the enjoyment of the property after the transfer because the partnership paid the made the the monthly payments on the first mortgage. As we indicated in our briefs, the reason that that was done under California law is because the deed of trust to Great Western carried with it an assignment of rents. So the the right to receive the income was transferred to the partnership when the when the when the property was transferred. So both the so the the liability which contained an agreement that Mrs. Bigelow would receive the income from the property was is that what you're saying?  Ever. Express or implied. The ---- Well, the tax court differed with you on that. Yes. It's your honor. In our opinion, yes. The the right to receive the income, the rental income, was transferred to the partnership. The obligation to make the payments on the purchase money mortgage with Great Western savings and loan, which was secured by that rental income under the deed of trust, was transferred to the partnership. The one ---- You said it was in essence transferred. Was it ever formally transferred? Wasn't she always the obligee, obligor under that loan? The trust remained. Yes. She remained as a listed obligor under the loan. Yes. The partnership was never listed as the primary. I mean, the partnership made the payments, but that obligation, there was never an ovation. No, there was no ovation. Okay. The partnership, the bank was aware that the partnership was making the payments instead of instead of Mrs. Bigelow, but there was not a specific piece of paper that said that the that the obligation was transferred.  The limited partnership did not charge her capital account for the payments it was making on her behalf, right? The partnership agreement required, the partnership agreement provided that she would hold the partnership harmless for the amount of the principal reduction in the, what was referred to as the contribution debt. There was nothing in the partnership agreement that said that she would hold the partnership harmless for the interest portion of that payment. The fact is, the limited partnership did not charge her capital account during her lifetime for the payments that the partnership made on her behalf on the loan, right? The partnership did not charge during her lifetime, as anyone who's paid on a 30-year mortgage knows. I think a simple no would be fine. I'm sorry. You didn't charge her capital account, but you did it postmortem, right? That's correct, at the time the property was sold. And did you include the interest payments on that, or just principal? No, just the principal. Okay. Under our point of view, as indicated in the briefs, is that the objective approach followed by the Fifth Circuit is far, far more preferable. The problem when one does not have an objective standard to follow is that the decisions become subject to certain vagaries and subjective determinations. For example, in this case, the tax court referred only to good faith, did not look at whether or not there was a full and adequate consideration paid for the transfer. In this case, clearly there was. $1.45 million of real property was exchanged for $1.45 million of personal property, limited partnership units. But you're excluding the $350,000 of the debt that the partnership, you say, assumed on her behalf. But the ultimate, the gross value of $1.45 million is the same. The net value is the same as well. Because if the property is sold by the partnership, as it ultimately was, then the gross value of $1.45 is going to be reduced by the amount of the loans. So both the gross and the net values are the same, either way you look at it. What consideration did she receive for the assumption of the debt? Separate and apart from the receipt of the limited partnership units? Yes. She didn't receive any separate consideration for assuming the debt. It was simply a question of not giving the debt. She was not relieved of the debt. I think the question is the other way around. Counsel, she had a prior obligation on the debt, right? Yes, Your Honor. But when the transfer was made to the FLP, did it formally, by contract, assume the debt in a secondary position? Or did it not assume the debt and later just made payments? It did not formally assume the debt. It made the payments. Okay. You see, that's sort of the contradiction, because you start off in answer to Judge Wardlaw's question. You said, well, in essence, we assume the contract. But when we start talking about consideration, you say, well, no, the partnership really didn't ever assume the obligation. You can't say that it's 1.4 and it's a wash because there's the additional loan that you say, in essence, that the partnership assumed. And there's, it doesn't seem to me to be fair consideration if you look at it in those terms. Do you see what I'm saying? I think I do. My response would be, Your Honor, that the partnership took the property subject to the loan. The value of the partnership the day before the property transferred, was transferred, was, I believe, $300. The value of the property, of the partnership the day after the property is transferred is $1.45 million less the amount, the principal amount of the loans. In both instances, or in exchange for that transfer, the partnership gave the decedent limited partnership units, which reflected the value of the partnership. But the value of the partnership is, again, it's subject to the loan. Either way, the value is the same. Well, it's not, depending on who owns the loan. I mean, if the partnership assumed the loan, you're correct. If the partnership did not assume the loan, if that's her personal obligation, then she received $350,000 more, right? I understand your point, Your Honor. I'd like to touch briefly, if I may, on the questions of business purpose. You offered three. One was protecting, as I recall, protecting the limited partners from personal liability, right? Correct. The second one was protecting them from limited partners from creditor liability, right? The potential liability of a co-owner, tenant in common. Right. In other words, any creditor liability. And the third was to prevent a partition action. Potential partition action under California law. Yes, Your Honor. But if the second purpose was to avoid creditor liability, apparently it wasn't successful because the creditor liability was assumed by the partnership, right? The only creditor liability that was assumed by the partnership was the liability to the Great Western Savings and Loan. What other creditor liability was there? This was a rental property, Your Honor, on a beach with a large seawall, large rock seawall in front of it. We had absentee owners spread across the country. There was liability to potential slip and fall, bodily injury, property damage liability. Well, that's your first reason. I think Judge Wortlaw was asking about were there any other creditors of which you were aware at the time you entered into the limited partnership? No. There were no existing creditors at the time of the transfer other than the bank loans. So in that sense, Respondent's argument that this is somehow an attempt to defraud creditors makes no sense whatsoever. The Kirkeby case under California law simply doesn't apply. There was also, I believe, a fourth business purpose. We've touched on the main ones, and that was the fact that there were, as I indicated, there were 12 different owners involved spread across the country from Southern California to Maine. A limited partnership is certainly a more efficient way to own property and manage property than tenants in common, in addition to the liability protections that it provides. And, in fact, the Church case has said a similar kind of situation where undivided, fractionalized interests were combined into a family limited partnership, and the Church case said that's perfectly reasonable business purpose. This property was designed to be an invest and hold. This was not a property designed to generate a great – it wasn't generating any particular monthly income from the rentals. And the Schott case, for example, says that invest and hold is a legitimate business purpose. You were renting it out the whole time, right? It was rented out the whole time. And that income from that went to pay for Mrs. Bigelow's assisted living, correct? No. Where did that money go? That money went to the partnership and was used to pay partnership obligations. Unlike virtually all of the other 2036 cases where predominantly liquid assets are put into an FLP, and then the income from those liquid assets is used to support the decedent, including the brand-new Corby case, which counsel asked you to look at, where they paid $120,000 in, quote, unquote, management fees. In all those cases, money was taken out for the use of the decedent. What were the other partnership obligations that the money went to? Repairs, utilities. The second tenant required that we put in a security system because they had an art collection they wanted protected. Monthly payments on the utilities, on the security system, gardener, property taxes, insurance, et cetera. You basically rented out a piece of property on Padera Lane for the amount that it would be to maintain that property? I find that hard to believe. I actually rented a house on Sandpoint and looked at homes on Padera Lane, and I find that argument kind of astounding. Well, my mother lived for almost 20 years, over 20 years on Sandpoint. It's a beautiful area. Beautiful area. Your Honor, we didn't know. It was $3,500 a month for the long-term lease, and it was basically, as shown in the briefs and in the tax court's opinion, economically a break-even proposition when one included the payment on the first mortgage to Great Western. That's the point, I think. But that anyway, I'm sorry. A break-even when you paid the debt that the partnership wasn't obligated to pay, right? I would respectfully disagree that the partnership wasn't obligated to pay the debt because the partnership was receiving the income. If — I suppose if one transferred the property to the partnership and said, okay, I'm going to give you this piece of property, but I'm going to keep to myself the right to receive all the rental income, and I'm going to pay myself the mortgage payment, which is secured by that rental income under the deed of trust, then the partnership would be generating a profit, and actually, it wouldn't. It would be running at a loss because it would have no money to pay all the other maintenance expenses. Well, at the end of the day, the major benefit here was to avoid estate taxes, wasn't it? I mean, in reality, I'm not saying it was the primary purpose, but in fact, there were no creditors other than the bank. There were no claims, and there were no partition actions. Those are the three business reasons that you gave for forming it. But there was potential liability. There was potential for all three of those. Well, I'm sorry. That never happened. It never happened. So the major, in reality, the major benefit that accrued was the avoidance of estate tax. But under the ---- I'm not saying it's bad or good, but isn't that, in reality, what happened? In the rearview mirror, perhaps. But if you look at the Kimball case and the Wheeler case, what those cases say in the Fifth was for a valid business purpose. Is protection of owners by means of being limited partners instead of tenants in common reasonably likely to provide them with a business purpose? Yes. Did it turn out that they didn't need it because there was no catastrophic injury? That's also true. But ---- Isn't she a general partner? That is the point that the IRS would like you to focus on. Well, it is in the agreement. It's in the partnership agreement that the general partner shall include Virginia A. Bigelow and or Franklin T. Bigelow, Jr. That is correct. And the decedent's trust was not ---- still had general ---- as the general partner, still had personal liability. Yes. For the creditors. I mean, on the creditors, on the tort claims. On her ---- as to her own creditors and as potentially to the tort claims against the property. Right. She did not ---- the trust no longer, however, had potential liability as it would have as a tenant in common if one of the grandchildren living in New York or Connecticut was involved in a catastrophic automobile accident and the plaintiff sought to reach that grandchild's interest in the property. That was now out of reach. That ---- and that the possibility that that grandchild's creditor could come to California and force a partition sale was now ---- was no longer possible. That protection, the decedent's estate, the trust did receive that protection. So even though she was general partner, there was still a benefit to the trust from those kinds of potential dangers.  Okay. Well, you asked for 15. We've given you 18, almost 19 minutes. So why don't we ---- it's time to hear from the Commissioner. May I save a few minutes for rebuttals, Your Honor? Well, we have other folks out there, but we'll give you a couple minutes. Thank you. Thank you. May it please the Court. Michael Hongs from the Justice Department on behalf of the Commissioner of Internal Revenue. The Court seems to have a good understanding of the basic issues in this case. A few points that I think perhaps I should make here in addition to what's in our briefs, first of all, the Bigelows place a lot of emphasis on whether there is some tension between the legal standards in the various circuits. I think that the Corby case that we sent in a few weeks ago from the Eighth Circuit in our 28J letter really illustrates that there is no substantial difference, because in that case, the Eighth Circuit is citing both the Third Circuit test and the Fifth Circuit test pretty much interchangeably. And as we explain in our brief, while courts sometimes use somewhat different words, I think they all come out to the same place. They focus the elements maybe under different names, but I think they all ultimately lead us to the same place. Just to clarify. Roberts. So in your view, how would you set up this transaction so you think it would have been legitimate? In other words, so that it would so that 2036 would be avoided? Yes. I think we'd have a different case if the mother had had instead of one property that was worth a million and a half, say she'd had two houses that were worth half that much, if she put one of them in the partnership and retained the other one so that she had enough assets to live on. I think one of the major issues in this case, as well as in Thompson and Strange and Corby, is that the decedents transferred away their, virtually all of their assets and essentially impoverished themselves. And so the tax court says in these cases, well, the only way to look at that is to draw the inference that there must have been an implied agreement among the children, because otherwise this would have been financial suicide. Nobody who's 85 years old says, gee, I'm in assisted living. My insurance policy is about to run out. I think I'll put my house into some partnership and several ties to the thing. I think we'd have a different case, in other words, if she'd put not all of her assets but some smaller portion of her assets. That might pass the test. There's another code provision. Isn't there another code provision where she could have actually put the house in the names of the kids and still live there for a certain period of years? I'm sorry to say I don't know. I just don't know. I'm pretty sure there is, that you'd actually have to put it in the names of the children and not be receiving any payments from it. That may be. You could still live there, and that would be the benefit. But there is another tax. I bet you Mr. Bigelow is familiar with it. He may know more about the estate tax law than I do, frankly. Well, if the partnership had charged the capital accounts right along, would that have made a difference to you? That certainly would have helped, but I don't think that's really the dispositive point here. I mean, that's a valid point that the tax court relied on. I think that there's enough other indicia in the case that would make this invalid. That's sort of the formal aspect of it, the failure to observe the partnership formalities. And it comes back to this idea that if you're trying to take advantage of this, you really have to turn square corners and keep the accounts in order. But the tax court was really, I think, relying on and finding a retained interest two different things. And we rely on two different things. One is the fact that she had a retained benefit in the sense that she retained the debt, but the partnership was paying it for her. But the other big aspect of this was what I just mentioned a minute ago, that she really had no other assets to live on and the court was finding a retained interest because otherwise this arrangement would have made no sense. She would have been completely impoverishing herself. And something I think to emphasize in that regard is the fact that Judge Wardlaw I think you asked earlier how her assisted living was being paid. It wasn't being paid by the rent. It was being paid by two insurance policies that she had. They were of fixed duration, and everybody knew that. This wasn't a surprise. And at the time that she formed the partnership, one of those policies was going to expire in I think eight or nine months later. The other one was a year after that. So everybody certainly knew that if the mother lived to that point, she was going to be hitting a financial bind. And it's not a stretch to imagine that whatever the partnership documents may have said, the children must have had an understanding that when that insurance ran out, they were going to do something to take care of their mother. And, in fact, the testimony of the trial more or less confirmed that. The testimony was that when those policies were getting close to running out, the children decided that they were going to sell this house and put it into something that they said would be a more liquid asset, something that would maybe generate more income, which is commendable in a sense. I mean, we should all be so lucky to have children that take such good care of their mothers. But it really belies the notion that this partnership was conducting a business. If you're conducting — if you're in the business of renting property out, you make your decisions about when to buy and sell based on the market conditions of whether you think you can get a better return on a different property, that sort of thing. You don't decide to sell it because you need it to take care of your mother. What that really reflects is the fact that everybody knew that, yes, the papers might say that this was owned by a partnership, but they all knew it was really mom's house, and they were going to make sure that she was provided until the end of her days with the income or proceeds from selling that house. The tax court's conclusion in that regard certainly is not clearly erroneous to say that there was a retained interest here. Roberts. Any further? One other point that I thought I should perhaps respond to in the reply brief, the Estate makes towards the end of the brief what really appears to be a new argument that they didn't raise below. They make an argument that, oh, there's no inconsistency here between arguing that exchanging the house for partnership units, which were worth less, that that's not inconsistent, because they say at the moment of the exchange, the partnership units were worth the same, and they only got this sort of discount for lack of marketability and minority interest and so forth over the course of three and a half years as the record, but the record says exactly the opposite. And I would direct the Court to our supplemental excerpt of record, tab 41, within that document, page 16, which is one of the appraisal reports that were submitted with the Estate tax return, where the Estate's appraiser said that she created this partnership in late December of 94, and by the end of December, she'd given away 6,000 units of the partnership. So it was only a couple of weeks in between, and the appraiser said there was no change in the value of those units during that time period, and he assigned his lack of marketability discount of 31 percent, I think it was, to that entire period. So the evidence doesn't support the claim that they're trying to make in that regard. The other point that I would make is that if they had raised that below, I suspect the Commissioner would have been able to assert some version of a step transaction type of a doctrine, which is that this was really all one transaction, that she created the partnership and transferred the units to her children in within a matter of a week or two, because that was the point of the whole thing. It was the gifting aspect of this. So they can't really be separated out and say, well, they had a certain value at the moment of creation, but several weeks later, they had a lesser value. Now, if you find just – I'm not a tax expert by any means, but if you find – if you – if the tax code is right and there's more estate taxes due, is there less gift taxes due? And if you say it really was her property all along? Yes, and that's taken account of in the notice of deficiency. The Commissioner's deficiency determination increased the estate but reduced the gift taxes. That's correct. But it ends up being a net gain for the Commissioner of I think it's about $150,000. Well, this is a fairly common problem in terms of trying to pass on, for example, ranches, family-owned ranches and so forth. And active management makes a difference in that, I would assume. But it's a tricky area, and we don't have much law on it. It is a tricky area. There is a growing body of case law, but I would agree with Mr. Bigel on one point, which is that this is a case of first impression in this circuit. With that, I'd be happy to – see, I'm almost out of time here. I'd be happy to answer any further questions, or otherwise, I'd just rest on our briefs. I don't see any further questions, so you may sit down. Thank you very much. We appreciate your time. Mr. Bigel, we'll give you two minutes. Thank you, Your Honor. Very quickly, sort of in – sort of in reverse order of points made. I'm not a tax expert, either. I'm a business and real estate attorney. I'm not a tax attorney. But the question about the gift tax does raise an interesting point, and that is, in a large degree, what the IRS seeks to do here is to unring the bell. Mrs. Bigelow was pre-deceased by her older daughter. The limited – the older daughter's limited partnership interest, which was about a 17 percent interest, went through her estate. There was a separate appraisal done for that estate, for that purpose. The IRS did not question the limited partnership interest, didn't – and the limited partnership interest of 17 percent was subject to tax in her estate, and subsequently her husband's estate, who's also died. In addition, after the property was sold and the proceeds were distributed, each of the limited partners paid capital gains tax on the amount of the proceeds which they recovered. This difference here has already been taxed. What the – what the IRS now seeks to do is to pull this back in and tax it a second time. All of this case law that we're talking about, the Wheeler case was decided in 1997, the year that Mrs. Bigelow died. Everything else has been within the past three or four years. So not only does all of this case law and theory come up after the partnership was formed, but after she died and – and most, virtually all of it after the estate tax returns were filed. In addition, the – the question about our raising a new argument in the reply brief, we actually made that argument in response to the IRS argument in their opposition brief that we were being inconsistent by saying the value is the same at the time of transfer, but it's because of the fractionalized difference – fractionalized discount, it's different, and you're being inconsistent in saying it's the same and different. There's an intervening three years, and obviously we weren't being inconsistent and – and forgive me, but I wasn't raising a new argument in the reply brief. That was in response to their opposition. Thank you, counsel. Your time has expired. Thank you very much. The case list will be submitted. Judge Gould, may I ask, do you want to take the morning break now, or do you want to wait until after the next argument? I would appreciate if we could take the break right now. Very good. We'll take a 10-minute recess. Thank you. All rise. This court is going to recess for approximately 10 minutes. And the next case to be argued will be Linkline v. SPC. Counsel, if you could take counsel's leave, we'll do this. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.   We are adjourned. Thank you, all.
judges: Thomas, Wardlaw, Gould